IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

GLORIA M. JACKSON, )
)
    Plaintiff, )
)
v. ) Case No.: CV-01-PT-3172-E
)
THOMAS E. WHITE, Secretary, Department )
of the Army, )
)
    Defendant. )

## MEMORANDUM OPINION

This cause comes to be heard on defendant Thomas E. White's ("White") Motion for Summary Judgment filed on May 28, 2002.

### FACTS

In 1978, plaintiff Gloria M. Jackson ("Jackson")[1] began civilian employment with the Department of the Army as a temporary employee at the Anniston Army Depot. She was later hired as a "career" employee at Fort McClellan in 1980, where she remained until her separation from employment with the federal government on July 30, 1999. Prior to this separation, Jackson occupied the position of Supply Technician, GS-2005-05, in the Military Police School, Directorate of Training, Training Support Division, at Fort McClellan.

The Base Realignment and Closure ("BRAC") process resulted in Fort McClellan being designated for closure. Fort McClellan was officially closed as an active installation on September 30, 1999. Prior to its closure, two major schools were located at Fort McClellan – the Chemical School and the Military Police School. Due to the closure, these two schools and their personnel were transferred to Fort Leonard Wood, Missouri.

---

[1] Jackson's date of birth is February 10, 1951.

On August 20, 1998, the Army informed Jackson that her position would transfer to the U.S. Army Military Police School, Ft. Leonard Wood. The Army offered Jackson the position as Supply Clerk, GS-2005-05, at Fort Leonard Wood. The Army advised Jackson that she would be required to relocate to Fort Leonard Wood by September 30, 1999. She was also informed that declination of the offer would result in her removal from federal service. Jackson initially acknowledged in writing her acceptance of the job.[2]

On March 22, 1999, Jackson was informed by Dr. Notar that she would not be promoted above GS-2005-05 level pay at Ft. McClellan at any time before her transfer of function would require her to go to Ft. Leonard Wood. On April 1, 1999, Jackson informed Civilian Personnel that she would not accept a transfer to Ft. Leonard Wood. Based on her declination, the Army, on June 15, 1999, gave Jackson a Notice of Proposed Separation from federal service. In the notice, the Army proposed July 30, 1999 as the effective date of Jackson's separation. On July 15, 1999, Jackson replied to the Notice of Proposed Separation. On July 20, 1999, the Director of Civilian Personnel notified Jackson that she would be separated from federal service effective July 30, 1999.

Jackson's supervisor, Ms. Vera Baker, retired effective August 28, 1999.[3] Jackson and Baker's positions were revised to create one position at Fort Leonard Wood – Supply Technician, GS-2005-07. Before April 6, 1999, Mr. Joseph Roberson ("Roberson") initiated a request for personnel action to fill the position of Supply Technician, GS-2005-07. On May 6,

---

[2] According to Jackson's declaration, she objected to the transfer because the transfer of function notice was not applicable to her job. She states that was advised by Colonel Cox that she had to accept the letter. She claims that she was told by Colonel Cox that she was going to be trained for and promoted into her second-line supervisor Vera Baker's position – a GS-2005-07 employee – prior to her arrival date at Fort Leonard Wood.

[3] Ms. Baker's job description was Supervisory Supply Clerk, GS-2005-07.

1999, the South Eastern Civilian Personnel Operations Center at Redstone Arsenal, Alabama, announced recruitment for the position of Supervisory Supply Technician, GS-2005-07, to be located at Ft. Leonard Wood, Missouri.[4] Mr. Roberson was the selecting official. On June 30, 1999, he selected Ms. Judith Keeth ("Keeth").[5] Keeth accepted the position on July 7, 1999. Her employment was to begin August 1, 1999. Jackson never applied for this position.[6]

Jackson requested that her employment be extended. The Director of Civilian Personnel, Sandra Carrozza ("Carrozza"), informed her in writing that the Army could not grant her extension due to applicable policies and procedures. Jackson was informed that the funds for her position at Ft. McClellan ended on July 30, 1999, and that those funds were then to be utilized to support Keeth's position at Ft. Leonard Wood, which started on August 1, 1999.

When Ft. McClellan was officially closed on September 30, 1999, employees from other components[7] at Fort McClellan whose jobs ended with no offer of any job, were considered as "excess employees."[8] These "excess employees" were considered for fifty-eight Alabama

---

[4] According to Jackson, the new job description was written and posted without giving her the opportunity to elect whether to accept "that" transfer of function before the position was made open to other individuals. According to the defendant, federal vacancies are listed at the Alabama State Employment Office in Anniston and can be found at www.cpol.army.mil. Furthermore, defendant notes that the vacancy was posted in the Civilian Personnel Advisory Center at Fort McClellan and distributed to the Military Police School for posting.

[5] Keeth's date of birth is January 11, 1950. Of course, she is older than Jackson.

[6] According to the defendant, Jackson was registered in the Army's Priority Placement Program (PPP) as a Priority Placement 2, since she declined the transfer of function. Jackson could have been referred to fill vacancies at other locations through the PPP. However, Jackson could not have been referred to fill vacancies at Ft. Leonard Wood under PPP regulations. As stated by the defendant, PPP regulations prevent an employee from being placed with the commuting area of the same location where she had already refused placement. Furthermore, defendant notes that Jackson only registered for vacancies in the local Anniston commuting area.

[7] Jackson was employed with the Military Police School. The Military Police School was relocated to Fort Leonard Wood.

[8] The defendant describes the term "excess employees" as civilian employees that were on the rolls at Fort McClellan on September 30, 1999.

National Guard positions that became available. Jackson did not receive one of these positions.[9] In addition to these National Guard positions, several former employees of entities at Fort McClellan came to work at the Anniston Army Depot (ANAD). No positions at ANAD were held open for employees of Fort McClellan affected by the closing of the base. The positions were registered in the DoD Priority Placement Program and as such, applicants would have been matched against any federal vacancy for which they were qualified and registered. No employees from the Military Police School who were younger than Jackson got a job at ANAD.

The DoD also implemented the Voluntary Separation Incentive Program during the BRAC closures. Under this program, separation incentive and voluntary early retirement were offered to employees in permanent continuing positions at ANAD to create vacancies for the placement of DoD employees from other activities who were subject to involuntary separation by Reduction in Force. Employees fifty years of age or older were eligible for the program. Additionally, only employees who were Priority 1, Priority Placement Program Registrants, were eligible to participate. Jackson was forty-seven years old when the program was implemented. She was also registered in the Army's Priority Placement Program as a Priority Placement 2, since she declined the transfer of function.

On December 11, 2001, Jackson filed a civil action against White "seeking declaratory, injunctive and equitable relief, reinstatement with backpay, and retroactive promotion for the age discrimination suffered by plaintiff from her discharge or constructive discharge by defendant." Jackson brought this action pursuant to the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621, et seq.

---

[9] According to the defendant, fifty-one of the fifty-eight employees selected for National Guard positions were over the age of forty.

## ARGUMENTS

White argues that the court should grant summary judgment on the merits of Jackson's ADEA claim because she cannot establish a prima facie case of age discrimination on any of her claims. White contends that Jackson has disclosed no direct evidence of age discrimination with regard to her claims. White states that Jackson has admitted that she has no statistical evidence of age discrimination. Thus, White notes that her claims must rely on circumstantial evidence and are subject to the burdens of proof analysis established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). According to White, Jackson may establish a prima facie case by demonstrating:

> (1) that [s]he was a member of the protected group of persons between the ages of forty and seventy; (2) that [s]he was subject to an adverse employment action; (3) that a substantially younger person filled the position that [s]he sought or from [s]he was discharged; and (4) that [s]he was qualified to do the job for which [s]he was rejected.

*Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1432 (11th Cir. 1998). Furthermore, White states that "[i]f Plaintiff fails to identify similarly situated, nonminority employees who were treated more favorably, her case must fail because the burden is on her to establish her prima facie case." *Jones v. Bessemer Carraway Med. Ctr.*, 137 F.3d 1306, 1311 (11th Cir. 1998).

Addressing Jackson's specific claims, White argues that Jackson fails to establish a prima facie case of age discrimination. First, White notes that the revised position was offered to and accepted by an employee older than Jackson.[10] Second, White contends that the Army was not required to personally notify her of the revised vacant position. Furthermore, White claims that the Army could not have referred Jackson for the position at Fort Leonard Wood under its

---

[10] In her complaint, Jackson incorrectly alleges that Keeth is younger than she.

5

regulations because she declined the transfer of function offer to that installation. Third, White asserts that Jackson was not considered for the National Guard Positions because she was not eligible for consideration. White states that Jackson was not eligible to be an excess employee because she was offered a transfer and turned it down. He notes that the employees whose jobs simply ended with no offer of any job, or who were still on the rolls at the end of September, were the excess employees considered for the fifty-eight National Guard positions.[11] Finally, White claims that he could not allow Jackson to choose her separation date absent a voluntary retirement, and that was not an option because Jackson was not eligible for voluntary retirement even if she remained on the rolls through the end of September of 1999. He notes that the funding for her position ended on July 31, 1999, and therefore she could not remain on the rolls. Furthermore, he states that Jackson was not eligible to select voluntary retirement because she was not fifty years old. Thus, he concludes that Jackson is not similarly situated with those employees who were permitted to remain on the rolls through September of 1999.

In response, Jackson states that she may block summary judgment "by either (i) discrediting the [employer's] proffered reasons, either circumstantially or directly, or (ii) adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). Additionally, Jackson notes that "[t]he failure to follow standard procedures may be relevant to the pretext question." *Kelley v. Airborne Freight Corp.*, 124 F.3d 64, 71 (1st Cir. 1997). Jackson also states that giving "demonstrably false reasons for the

---

[11] White also states that no employees from the Military Police School were considered for the National Guard positions. He additionally notes that 88% of the individuals selected for the positions were approximately Jackson's age or older.

firings" to terminated employees provides an evidentiary basis upon which "a reasonable jury could have inferred that the letters were a cover-up for discriminatory reasons." *EEOC v. Century Broadcasting Corp.*, 957 F.2d 1446, 1457 (7th Cir. 1992).

     Addressing the merits of her claim, Jackson argues that the Army inappropriately applied the transfer of function mechanism to her job at Fort McClellan. At the very least, Jackson contends, the Army did not correctly apply the transfer of function regulations. Specifically, Jackson notes,

> [t]ransfer of function means the transfer of the performance of a continuing function from one competitive area and its addition to one or more other competitive areas, except when the function involved is virtually identical to functions already being performed in the other competitive area(s) affected; or the movement of the competitive area in which the function is performed to another commuting area.

5 C.F.R. § 203. Furthermore, she states that "[i]n a transfer of function, the function must cease in the losing competitive area and continue in an identical form in the gaining competitive area (i.e., in the gaining competitive area, the function continues to be carried out by the competing employees rather than by noncompeting employees)." 5 C.F.R. 351.301. According to Jackson, the Army violated these regulations by terminating her employment for refusing to transfer to a different job [the GS-05 job] which was never filled at Fort Leonard Wood by any other person.[12] She states that she never got the chance to accept or decline the job offered to Keeth. She maintains that she would have accepted the revised job at Fort Leonard Wood, with the GS-07 level pay, if she had been offered this job in her transfer of function letter. Jackson states that

---

[12] According to Jackson, Keeth's GS-07 job is not the same job that she was offered and declined.

she was qualified to perform the job offered to Keeth.[13]

Jackson also maintains that the separation of her employment on July 30, 1999, was also incorrect because her GS-2005-05 Supply Technician position was not even scheduled to transfer to Fort Leonard Wood. She claims that the Supply Clerk position which was scheduled to transfer to Fort Leonard Wood was the supply clerk function performed by the RTSB office, not the supply clerk function performed by the RIMS office where she was assigned. In support of this proposition, she states that the supply clerk for the RTSB office at Fort McClellan, Louis Quigley, was referred to on the Fort McClellan Table of Distributions and Allowances ("TDA") as paragraph 523A, line 19. However, her supply clerk position in the RIMS office was shown on the TDA as paragraph 523A, line 20. Jackson contends that former Director of Civilian Personnel at Fort McClellan, Sandra Carrozza Schneider, made her subject to the conditions of a transfer of function offer by simply writing her name – by hand – on the Paragraph 523A, line 19 position of the TDA designated for transfer to Fort Leonard Wood. She claims that the RIMS office at Fort McClellan had no RIMS office counterpart at Fort Leonard Wood, while the supply clerk function of the RTSB office at Fort McClellan was scheduled to transfer to and continue on at Fort Leonard Wood.

Due to the Army's failure to follow its transfer of function procedures, Jackson argues, she lost her job and Priority 1 placement status as a current employee of Fort McClellan. If this error had not occurred, she claims that she would continued on the rolls at Fort McClellan until September 30, 1999. Jackson states that her improper separation prevented her from being considered as an excess employee and available to fill one of the fifty-eight National Guard

---

[13] Jackson claims that her experience doing her supervisor's GS-2005-07 job from August, 1998, until the date of her separation from the Army on July 30, 1999, made her qualified for that position.

positions. She contends that younger persons less qualified than herself were hired for these National Guard jobs, including supply clerk. Specifically, she claims that Anita Fountain, age thirty-nine, received a GS-05 job with the National Guard of "Safety Technician." She asserts that there were also three GS-04 supply clerk jobs at the National Guard that she would have accepted which were offered to Karen Glover, a military personnel status technician, Paula Anderson, a recreation assistant, and Minnie Jones, a secretary.[14]

To further support her age discrimination claim, Jackson also argues that the Army more favorably treated similarly situated younger employees at Fort McClellan during base closure. For instance, she claims that the transfer of function of Colonel Cox's secretary's job to Fort Leonard Wood should have ended that position at Fort McClellan. To the contrary, Jackson notes, Colonel Cox promoted twenty-eight year old Michelle Morton from her GS-05 position at paragraph 523A, line 17, to GS-06 and put her in his secretary slot at paragraph 523, line 5. Additionally, she asserts that Colonel Cox allowed Judy Chapman, age thirty-nine, to resume her employment at the Military Police School after she had declined a transfer of function offer to Fort Leonard Wood and resigned her job. Finally, Jackson expects that the evidence will reveal that thirty-nine year old Anita Fountain, thirty-eight year old Donna Bain, and thirty-seven year old Julia McQuirk, each declined transfer of function(s) to Fort Leonard Wood, but were allowed to continue on the current rolls at Fort McClellan through August or September of 1999, after other employees had assumed their job functions at Fort Leonard Wood. Jackson notes that these individuals worked at the Chemical School and Training Brigade and were subject to the same set of rules for transfer of function(s) as the Military Police School. Since these similarly

---

[14] According to Jackson, these three individuals had less supply clerk experience than herself.

situated younger employees were treated differently, Jackson argues, the Army's alleged reasons for the disparate treatment is pretext for age discrimination.

In reply, White argues that Jackson's declaration should not be considered in support of her opposition because it fails "to show affirmatively that [she] is competent to testify in the matters stated therein." Federal Rule of Civil Procedure 56(e). White states that the basis for Jackson's allegations in her Declaration is her experience working as a GS-2005-05 Supply Technician at Fort McClellan. As such, White claims that Jackson's allegations concerning the creation of the GS-2005-07 position, testimony regarding which particular positions were transferring to Fort Leonard Wood, her being subject to transfer because of the actions of Ms. Carrozza, her qualifications for National Guard positions, and details of employment situations of co-workers are not based upon personal knowledge. Thus, he concludes that Jackson's Declaration should not be considered for summary judgment purposes.

As for the merits of Jackson's claims, White replies that there is no dispute that the revised higher level job at Fort Leonard Wood was competitively announced and awarded to an older employee, Keeth. He states that there is no dispute that Jackson did not apply for this position. White asserts that Jackson has not identified any statute, regulation or policy requiring the Army to personally notify her of this particular position. Additionally, White points out that Jackson has not presented any evidence of the Army promoting any employee in conjunction with making a transfer of function offer. Addressing the National Guard positions, White states that Jackson has failed to dispute that no employees of the Military Police School were considered for these positions.[15] He also notes that Jackson has produced no similarly situated

---

[15] According to White, the 200 Military Police School employees either retired, accepted a transfer of function, or were terminated.

comparator with regard to the National Guard positions. In support of this argument, White asserts that Jackson has not disputed that there was a separate TDA for each school at Fort McClellan. Consequently, the two employees of the Chemical School and the employee of the Training Brigade were in different organizations with different missions that received separate funding.[16] Finally, White concludes that Jackson could not choose her separation date absent voluntary retirement, which she was not eligible for. He notes that her contention that Michelle Morton was able to choose her separation date is misplaced. According to White, Morton was a "term employee" and was thus not offered a transfer of function. Morton's term appointment was extended to not exceed September 30, 1999, and her appointment expired on September 30, 1999. White states that Morton was never considered for one of the National Guard positions. As for Jackson's complaints regarding Judy Chapman, White notes that Chapman rejected and later accepted a transfer of function for the same grade level job. White states that Chapman was never offered a two-grade level promotion to take the job. Consequently, White claims that Chapman was not more favorably treated.

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted based upon facts developed during the pleadings, discovery, and supplemental affidavits, etc., if together, they show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-33 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty*

---

[16] White points out that Jackson stated that these employees were selected for National Guard positions because they were still on the current rolls of Fort McClellan during August and/or September of 1999, not because of their age.

*Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the initial burden of explaining the basis of his motion. *Id.* The non-moving party then bears the burden of showing that there are specific facts demonstrating that there is a genuine issue of fact for trial. *Id.* at 324. "When deciding whether summary judgment is appropriate, all evidence and reasonable factual inferences drawn therefrom are reviewed in a light most favorable to the non-moving party." *Korman v. HBC Florida, Inc.*, 182 F.3d 1291, 1293 (11th Cir. 1999). The trial court must resolve all reasonable doubts in favor of the non-moving party, but need not resolve all doubts in a similar fashion. *Barnes v. Southwest Forest Indus., Inc.*, 814 F.2d 607, 609 (11th Cir. 1987).

## CONCLUSIONS OF THE COURT

Whatever may have resulted in plaintiff's employment disappointments, the court perceives absolutely no reasonable inference that it resulted from age discrimination. Her arguments are tantamount to a statement that, "It's raining, so I must be in London."

Perhaps the closest the plaintiff *might* have come to an age discrimination claim *would have been* her argument with reference to the position filled by Keeth. Even if Keeth had not been older (incorrectly alleged to the contrary by the plaintiff), possible imperfections in addressing the administrative vagaries resulting from a base closure do not create a reasonable inference of age discrimination. The evidence here related to age only suggests to the contrary.

Plaintiff's problem was caused by her declining the proffered transfer. If she had accepted it, other options may have developed. There is no evidence, however, that any employee similarly (certainly not nearly identically) situated to the plaintiff was treated differently. Even if there were some possible arguable difference, there is no inference that it was based on age.

The defendant's motion will be granted, subject to the court's possible allowance of leave to amend. The court will await entry of a final judgment until it has received the magistrate judge's report and recommendation with regard to leave to amend.

This 11TH day of July 2002.

/s/ Robert B. Propst
ROBERT B. PROPST
**SENIOR UNITED STATES DISTRICT JUDGE**

The defendant's motion will be granted, subject to the court's possible allowance of leave to amend. The court will await entry of a final judgment until it has received the magistrate judge's report and recommendation with regard to leave to amend.

This 11TH day of July 2002.

/s/ Robert B. Propst
ROBERT B. PROPST
**SENIOR UNITED STATES DISTRICT JUDGE**

The defendant's motion will be granted, subject to the court's possible allowance of leave to amend. The court will await entry of a final judgment until it has received the magistrate judge's report and recommendation with regard to leave to amend.

This 11TH day of July 2002.

/s/ Robert B. Propst
ROBERT B. PROPST
**SENIOR UNITED STATES DISTRICT JUDGE**